The case we'll hear today is Montville Township Board of Ed versus Zurich American Insurance Company. And we'll hear from counsel. Thank you. Good morning. Good morning. My name is Stephen Edelstein, and our office represents Can I hold you up for one second? Judge Greenberg, can you hear us? I can hear everything. Terrific. Good morning, Judge Greenberg. My name is Stephen Edelstein, and our office represents the Montville Board of Education. If I may, I'd like to request to reserve three minutes for rebuttal. That'll be granted. Thank you. So for Montville, the starting point for this case is really March of 2012. So let me ask you this question. Sure. Because I know you didn't want me to hear the litany, right? I appreciate it. Yeah. So do you concede that the nature of Child M's claims against you are generally that you knew about fines or finesse, I don't know how you pronounce it, sexual molestation and abuse of students while he worked for you? I do. You agree that those are the allegations? I do agree that those are the allegations. Okay. In fact, the word molestation is actually used in the complaint. Okay. So then what doubt arises then when you compare the allegations in the complaint to the language of the policy? The question here is whether the prior known acts exclusion applies, so consequently whether there was knowledge on the part of the Montville Board of Education in March of 2012 when it first reported these events to Zurich. There's lots of ‑‑ there's a great deal of basis for saying and believing that Montville did not know it. For example, there were ‑‑ Well, the question ‑‑ No, no, I think we're going the same direction. This isn't a summary judgment motion. We're just looking at the complaint and comparing it to the policy, right? Well, that's what the Four Corners rule would say one should do, just look at the complaint and compare it to the policy. But here this is a diversity action and we're going to apply New Jersey law. Right. And New Jersey law has fundamentally rejected that approach. It has rejected the pure Four Corners approach. That's the SL Industries case. And that case has been approved by the Third Circuit. But must we resort to extrinsic evidence? We didn't ‑‑ I mean, it may not be necessary. In this case, I think, Your Honor, that you must, because the allegations of this complaint are so general and so unspecific that they do not provide a solid basis for invoking the exclusion. I mean, the language, that's an interesting position, right? So some of the language used is known pedophile and child molester, various acts of sexual molestation and or child abuse, and abusive and or sexual conduct. I'm not sure there's anything equivocal about that. So that must not be your point. No, my point was not that it was equivocal, but that it was vague. There's no fact alleged. Okay, let's submit equivocal for vague. There's no fact alleged. It's conclusory. It is a conclusory allegation that the board was aware that Fennis had molested children. Your Honor, let me interrupt and ask you a fundamental question. As I understand it, the court took the position that the abusive act coverage covered it, but that it was the exclusionary cause that knocked it out. That's correct, Your Honor. So what we're really concerned is not whether there's coverage in that sense, but whether or not the exclusionary cause knocked it out and there would be no coverage, not because basically there was no coverage, but because of the exclusion. Yes, and in that regard, Judge Greenberg, I believe that New Jersey law, which applies here, and I look at the performance case as one example, requires that the carrier trying to invoke the exclusion has the burden of showing that the case falls within it. And here, just to get back to Judge Greenaway's question for a moment, if I may, when faced with allegations that don't turn on specific facts, and by that I mean an allegation that person X or administration Y or board members Z were aware of molestation because they learned it in this fashion or that fashion, unable to deal with that kind of specific allegation, it's appropriate, we argue, to go beyond the four corners of the complaint and see what's actually going on, understanding that the carrier has the burden here. I hope I don't misunderstand this case, but as I understood it, in this particular case, the issue is not your client is not being sued because of the abusive acts of this man. They're being sued because they did not reveal the circumstances. That's the way I understood it. And that this act of not revealing the circumstances arose after the abusive act of coverage went into effect. That is somewhat true, Judge Greenberg. When Cedar Hill first sued Montville in 2014, and after some procedural changes, that complaint was joined in by the Child M family. The allegation was that Montville had failed to disclose to Cedar Hill the Fennett's history, and more specifically that there had been an agreement that they would not do so. The trial court in that case upheld the agreement, and the appellate division upheld the trial court's upholding of the agreement, hence the 10th count of that complaint was dismissed. The appellate division did say that a jury might find that Montville had a further duty to generally disclose or publicize what it knew about Fennett's. So in that sense, yes. But I think that the basis for the exclusion that is urged by the carrier, and that Judge McNulty found to be applicable, was the allegation of specific acts of molestation and abusive acts. And to that we say, were one to look even an inch outside the four corners of that complaint, that's not a supportable allegation at that stage of the proceeding. The child here is not suing Montville because of the abuse, because it was responsible for the acts of the second school. That's true. I mean, in a sense they say that Montville is responsible because it should have, they say, created some body of knowledge that would have prevented Cedar Hill from employing this man. But from a policy standpoint, I believe it is the nature of what it is that Fennett is accused to have done that is being brought to bear to invoke the exclusion. Or at least how it's alleged in the complaint. I can't give you anything, because what I suggested would have been helpful to you. But I think, I don't know. Perhaps, but I'm trying to be candid in responding in terms of how Judge McNulty viewed the exclusion. Your Honor is quite right that the actual cause of action against Montville in the underlying case had to do with a claim that it failed to sufficiently disclose what it knew about Fennett. But at this point in the proceeding, we're only dealing with the duty to defend, not the duty to indemnify. I agree with you. Wouldn't there be a duty to defend? I certainly think there would be, Your Honor. And that's been the Board of Education's position from the beginning. What's the universe of extrinsic evidence that we should look at? Because, of course, there's the one question, why didn't you bring it up before? And what should happen as a result of you not bringing it up until the reply? But then there's also the question of what's the universe of extrinsic evidence? And when we define that universe, what's the consequence of the defined universe? It would seem that you're too narrowly defining the universe in your reply brief and that a broader universe of extrinsic evidence leads to the same conclusion that looking at the allegations of the complaint would. So I know that's a lot, but I have confidence that you'll be able to answer my question. Thanks. Thank you. I will do my best. The key events that comprise that universe are three separate occasions on which there was a report to Dyfus, now called something else, with regard to Mr. Fenness's conduct during the years that he was at Montville. There was one in 2008, June 20, 2008, one July 14, 2009, one March 11, 2010. They all derived from the same kinds of facts. Mr. Fenness was letting kids, small children, sit on his lap. He was being too friendly to them. He was holding their hands. In one instance, he allowed someone to touch his leg. He was too friendly. He was sending texts. And in each case, the allegations which at root had to do with some sort of pedophilia were found by Dyfus to be unfounded. That's the state of knowledge that Montville had in 2010. And is your argument that you can't ascribe the thoughts and knowledge that the various parents say they transmitted to the school district because there's no specificity as to who specifically learned it? No, it's really something different from that. It is that the conduct that was being conveyed to Montville as of July 1, 2011, when this policy period began, the conduct that had been conveyed to Montville about Fenness or which Montville had learned on its own did not meet the definition of the traditional definition of molestation and would not, in other than the conclusory fashion pleaded in the complaint, constitute abusive acts. Abusive acts in the policy is a defined term. So in order to arrive at the conclusion that you hoped for, we'd have to disregard the allegations and define extrinsic as narrowly as you have being Dyfus's conclusions that the allegations were unfounded. Dyfus's conclusions, I'm seeing that my red light is on, but I'll continue if it's okay. We'll get you on rebel, but you can answer that question. Not quite is the answer to your question, Judge Greenaway. There are those three specific examples that show that someone impartial, Dyfus, reached a conclusion that the allegations were unfounded. And then there is the body of knowledge. No one has shown in this case, it's not even alleged with specificity, that anybody at Montville had any specific information about issues of molestation that would have risen to a level that would have required reporting. So when we look at what happened here, the questions for us are, as someone once said, what did they know and when did they know it? And what they knew in January, on July 1, 2011, was different from what they knew in March of 2012 when they and everyone else read in the newspaper that Fennis had been indicted. All right, thank you, Counsel. We'll get you on rebuttal. Thank you. Good afternoon, Your Honors. Good afternoon. May it please the Court. My name is Lorraine Armenty and I represent Zurich American Insurance Company. Your Honors, the District Court's finding that Zurich's prior known act exclusion applies was correct. It was correct because it was based on the holdings of SL Industries, followed the principles espoused in that case, and reviewed but rejected the extrinsic evidence cited to by Montville because it did nothing to change the nature of the claims made by Child M and constituted nothing more than a denial of Montville's knowledge of abusive acts in this case. Well, you bring up a point. I mean, your adversary points out, hey, look, we got these things for sure. We brought them to Dyfus. Dyfus said nothing to it. Doesn't that go to their knowledge? They said, all right, well, we gave it to the government. We did everything we could. It does go to their knowledge, Your Honor. It absolutely goes to their knowledge. Okay. But the principle of SL Industries, which is the foundation of Montville's appeal, is that a denial of liability, i.e., whether or not Montville had knowledge and whether it had knowledge only of inappropriate conduct versus molestation, is not the issue on a coverage determination. The issue on a duty to defend is whether the allegations potentially bring the claim within the coverage grant, and if they do, whether there are any exclusions that apply. Okay. So with that definition. But do you agree that except for the exclusion, the basic coverage under the Abusive Act policy would have you held in here? The court accepted that premise, I think. Good afternoon, Your Honor. The court did accept that premise using the words, Zurich really does not dispute that the claim comes within the insuring grant. The answer to your question is that in our disclaimer, we reserved rights on whether or not the grant of coverage was satisfied, but then disclaimed fully on the exclusion. So I cannot concede for today's purposes that the claims as alleged by Child M fall within the coverage grant, but I'm here to argue about the applicability of the exclusion. Okay. So when we think about the extrinsic evidence on the one hand and the allegations and the complaint on the other, right? So tell us how we should think about prioritizing that information and then applying it. Okay. Do you ascribe to the notion that if the allegations lead to a particular conclusion, you don't have to look at extrinsic evidence? Or do we all put it in a pot and see where it takes us? What's your view? Okay. My view is the view that SL Industry espouses, which is, in the first instance, New Jersey is a four corners state. You look to the allegations of the complaint first. If there is a potential for indemnity coverage, there's likely a duty to defend. If you look at those allegations and there is no potential for indemnity coverage, there is no duty to defend. However, SL Industries talks about a refinement, if you will, or an exception to the four corners rule that says if there is information outside of the complaint, true but unpleaded facts that would change the character of plaintiff's or claimant's claims such as to potentially bring them within the coverage grant, those facts may not be ignored. So in this case, the facts we submit that the extrinsic evidence that is being put forth by Montville are the DIFAS reports and the conclusions that the reports or the complaints were unfounded. What does that say? That says and supports what Montville's argument is that we didn't know about abusive acts until he was indicted in 2012, I think it was. We didn't know. All we knew was that there were these complaints of inappropriate conduct. That's an issue that goes to the underlying liability of Montville as against its claims by Child M. Child M says, you knew about abusive acts. Montville says, no, I didn't. Look at this extrinsic evidence. DIFAS didn't even find these complaints to be founded. But a denial of liability, as the district court said below, if a denial of liability controlled the duty to defend your honors, there would almost always be a duty to defend. So what you're saying, then, if I'm understanding you, is look at the underlying facts in these investigations by DIFAS. Mr. Fenn is having children sit on his lap, holding hands, all of that. Take that with the allegations and the complaint. And clearly you couldn't say, looking at those two together, that Montville didn't know. Right. That's your point. Well, I think what you're saying is not just looking at the DIFAS conclusions, but looking at what actually was found by the appellate division to have gone on, that we would also take that into consideration by way of extrinsic facts. Well, I mean, if you're going to look at extrinsic evidence, which is what your adversary wants us to do, you can't just look at the conclusion. If you look at the underlying facts upon which the conclusion was drawn and take the allegations and then put those together, it would certainly be hard to come to the conclusion that it's all innocuous, I suppose. That's right. That's your point. That's my point, Your Honor. And in SL Industries, it's a very different situation than we have here. And although the court below abided by the principles there, the information that the court looked to in SL Industries was a complaint for wrongful termination with no claim of bodily injury. And in that case, the insurance company said, no duty to defend. There's no BI. Our policy's not triggered. After – go ahead, I'm sorry, Your Honor. I'm sorry. Just – we talked about the DyFus investigations. Obviously, we have state court rulings that talk about the facts, the – Appellate division. Appellate division, obviously. Yes. There's a summary of the underlying facts in that. I presume that's part of the universe of evidence that can be considered within extrinsic evidence, yeah? We cite that in our brief, Your Honor, as certainly additional extrinsic information that further supports Child M's allegations of abusive acts. Yes. Is there any argument that you couldn't ascribe that knowledge to Montville? I'm sorry. I'm sorry. Is there any argument that you couldn't ascribe the facts laid out in the appellate division opinion to Montville? No. And the reason is the appellate division is pretty clear when it lays out what Montville knew and when it knew it. It talks about what it knew as of 2005. It talks about the reports that were made as a result of what it learned in 2008. And then again, more complaints by parents and grandparents and staff members leading to a second report to DIFUS in 2009. All of this and further information in 2010. Principal Adams was at the heart of this. There is no question that knowledge was had by Montville. And by the way, the defendants in the underlying action, it's the Board of Education, it's the school, and it's – I can't remember. There was a third Montville-related entity. So no question that the appellate division talks about knowledge held by the school district. So just to tie this all up, your argument, I guess, is that whatever DIFUS concluded is immaterial. It's immaterial for purposes of this procedure. Absolutely, Your Honor. Yes. Yes. And I should point out that not only is this information not of the ilk that was considered. By this I mean what Montville presents. Not of the ilk that was considered in SL Industries, which by the way were answers to interrogatories by the plaintiff that then created or put in a claim for bodily injury. But if you look at the cases, which I'm sure you have, that we cited by the New Jersey Appellate Division in Germantown and State Farm v. Gregory, both sexual molestation cases, the defense to coverage was, well, wait a second. The high school student here who was the abuser, he pointed to a police report and said, there's some allusion that it alludes to the fact that this wasn't rape, that the victim consented. There's deposition testimony here that suggests by the victim herself that perhaps she consented because they were previously boyfriend and girlfriend. And what the court in Germantown said was, we're not here to decide the liability. It's clear that the liability case is not one-sided. But when looking at the coverage of this case, we are here to look at the claims. And the claims against you, high school student, are that you intentionally, that you raped this other high school student. No coverage. If I may, one more, Your Honor? Sure. In State Farm v. Gregory, a husband was engaged in child abuse. He and his wife were sued in a civil action for the abuse. And the allegation against the wife was, you knew what your husband was doing. You knew he was a pedophile. You knew he had the propensity to do this. On the coverage case, the wife argued. So no coverage for the husband. And the wife argued, wait a second, I'm in a different position here. I didn't know. I didn't know what my husband was doing. I didn't know he had a propensity. And in the coverage case, what the court said in response to that, which is not very different than what we're hearing today, Your Honors, was Charlene, the wife's argument is that she should not have been denied coverage because she denies knowledge of her husband's alleged propensities. The court says whether her assertions are true or not, and whether the victim's allegations are true or not, have no bearing on the coverage issues raised in this case. Coverage does not turn on whether the injured person can ultimately prove his or her allegations, but whether the allegations fall within the coverage defined by the policy. This is precisely what is before the court today. And I should add that this is the second bite at the apple that Montville has here. There have been a series of decisions in this case. And one of them was a motion for reconsideration, when they lost on the GL section of the policy. And in that motion for reconsideration, Montville brought to the court's attention a sealed document, which was a DIFAS report and conclusions, right around the time or immediately prior. Is this part of the record? Yes, it is, Your Honor, because it's cited to, and I'm not going to say anything else about that document. It was cited to in the GL opinion. And what the court said there, after citing the refinement to the Four Corners Rule under SL was, okay, I'm going to look at that extrinsic evidence, but the same thing it says here, because it's pretty much the same information that Montville is taking a shot at again. That exception to the Four Corners Rule, said the court below, meaning looking at extrinsic evidence, is to be distinguished from the defendant insured simply saying that it will prevail on the merits and thereby negate some exclusion. That does not change the nature of the claims being asserted. And the court cited to Germantown and State Farm v. Gregory. Your Honor, in response to the argument that the third-party complaint by Child M is ambiguous, our position is that the specific words that are used in that complaint are the same words that are used in Zurich's Abusive Act exclusion. Sexual abuse, sexual conduct, molestation, child abuse. The exclusion in Zurich's policy talks specifically to molestation or abuse, including sexual molestation. Let me ask you this question. S.L. Industries and Abuzad don't require that we consider extrinsic evidence. It's only, it may be looked at. Well, that's right. That's right, Your Honor. And in fact, in S.L., that information was never brought to the attention of the insurance company until the eve of trial, the extrinsic evidence. So it's not required. And it was not taken into consideration in S.L. Industries. Sometimes it has to be required. Suppose somebody buys a car, a Ford, and gets into an accident, and somebody sues them, and then the complaint alleges he was driving a Chevrolet. And there's a police report, pictures, everything else showing it was a Ford. Although the complaint is it's a car that's not covered because it's a Chevrolet. Now, I think that the court in that case has to make a declaratory judgment or do something. You can't leave the guy hanging because the plaintiff won't amend his complaint. I mean, something has to be done to give him coverage. If there is extrinsic evidence that would bring the claim within the coverage grant, Your Honor, S.L. Industries speaks to, Justice Garibaldi says, cannot ignore true but unpleaded facts. So I think that may answer your question. But that's not. A true but unpleaded fact. I'm sorry, Judge. I don't know if that, I couldn't hear the beginning of what you said. That would be a true but unpleaded fact. Yes, the car. Yes. All right. Thank you, counsel. We'll hear from you about it. Let me add just two things. One, the position that was taken by the district court and, frankly, the position that was taken by Zurich is summed up in one short sentence in Zurich's brief to this court, and it is this one. Montville's assertion that it did not know Fennes was abusing students while he was a teacher at Montville is immaterial to the question of whether the prior known acts exclusion applies. That's, in fact. Is that within the GCL discussion? That's at pages 16 and 17. Of which opinion? It's of no opinion. It's of Zurich's brief to this court. Yeah, but you said Zurich was quoting the district court. Yes, I'll read the full sentence. As the district court concluded on Montville's motion for reconsideration, Montville's assertion that it did not know Fennes was abusing students while he was a teacher at Montville is immaterial to the question of whether the prior known acts exclusion applies, and that's in the joint appendix at pages 42 and 43, that portion of the district court opinion. That's a bitter pill for any insured to swallow, and especially for a public insured such as a board of education, when they believe they have real information and real defenses and don't find any forum to express them. And I think that Judge Greenberg hit the nail on the head when he said that before we reach the question of indemnity, we reach the question of defense. And at the very least, what should have happened here, given the circumstances, is that Zurich should have tendered the defense. Where it went after that might be subject to the facts that develop, but it is hard to accept as the insured, remembering all the indulgences that New Jersey courts give to coverage, it's hard to accept that one might be able to disprove the allegations of the complaint, win the case, but still have no coverage. I don't think that that's a just result. Do you disagree with your adversary that in thinking about extrinsic evidence that, excuse me, that the underlying facts of the Dyfus investigations, coupled with the allegations in the complaint, certainly speak to the critical issue of knowledge? I think there are components of it. I don't think that they're the whole story. Because here, Montfield didn't just say in a kind of naked fashion, provide coverage because these allegations aren't true. They showed that that's irrelevant, right? Yeah, well, I suppose. Although I don't think that that would be irrelevant under SL, so long as there was something Montfield could point to. And here, remembering that this was a motion for summary judgment, remembering the burdens of proof, and I believe this court's review at this point is plenary, there has been no determination as to whether Montfield's position was accurate or inaccurate. And unless this is reversed or remanded, there never will be. And that doesn't strike me as a fair circumstance for the insured. Okay. Thank you, counsel. We'll take the case under advisement. We thank counsel for excellent briefing and argument.